UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JEFFERY WARREN,
                        Plaintiff,                      09-CV-6217

            v.                                          DECISION
                                                        and ORDER
MICHAEL J. ASTRUE,
Commissioner of Social Security,

                  Defendant.
_____

## INTRODUCTION

Plaintiff Jeffery Warren ("Plaintiff") brings this action pursuant to the Social Security Act (codified in relevant parts at 42 U.S.C. §§ 405(g) and 1383(c)(3)), seeking review of a final decision of the Commissioner of Social Security ("Commissioner"), denying his application for disability insurance benefits ("DIB") and supplemental security income ("SSI").[1] Specifically, Plaintiff alleges that the decision of Administrative Law Judge ("ALJ") Lamar W. Davis denying his application for benefits was contrary to applicable legal standards and was not supported by substantial evidence contained in the record. Plaintiff requests that the Court reverse the judgment of the Commissioner and remand for calculation of benefits, or in the alternative, for the application of proper legal standards.

_____

[1] This case was transferred to the undersigned by the Honorable David G. Larimer, United States District Court for the Western District of New York by Order dated July 16, 2010.

The Commissioner moves for judgment on the pleadings on the grounds that the ALJ's decision was correct as it was supported by substantial evidence. The Plaintiff cross-moves for judgment on the pleadings and opposes the Commissioner's motion. For the reasons set forth below, I find that the Commissioner's decision was contrary to applicable legal standards and not supported by substantial evidence in the record as a whole. I hereby deny the Defendant's motion for judgment on the pleadings, grant the Plaintiff's motion for judgment on the pleadings and remand this claim to the Commissioner for further proceedings consistent with this decision: calculation and payment of benefits.

## BACKGROUND

On April 22, 2005, Plaintiff filed a Title II application for a period of disability and disability benefits and protectively filed a Title XVI application for supplemental security income, alleging disability beginning June 1, 2001. (T. 100-102). These claims were initially denied on October 20, 2005, and upon reconsideration on July 28, 2006. (T. 31-35, 73-76, 85-88). Thereafter, the Plaintiff timely filed a written request for hearing on September 15, 2006. (T. 69-71). On September 19, 2008, the ALJ held a video hearing in Buffalo, NY. (T. 494-514). The Plaintiff and his attorney appeared in Rochester, NY. Id. Julie Andrews, a vocational expert ("VE") was also present. Id.

In a decision dated November 25, 2008, ALJ Lamar W. Davis found that the Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). (T. 18-30). The Appeals Council denied review on March 26, 2009, rendering the ALJ's decision the final decision of the Commissioner. (T. 2-4). The Plaintiff subsequently filed this action on April 29, 2009.

## DISCUSSION

### I. Jurisdiction and Scope of Review

Title 42, Section 405(g) of the United States Code grants jurisdiction to Federal District Courts to hear claims based on the denial of Social Security benefits. See Mathews v. Eldridge, 424 U.S. 319, 320 (1976). In addition, Section 405(g) directs that the District Court must accept the Commissioner's findings of fact if those findings are supported by substantial evidence in the record. See Bubnis v. Apfel, 150 F.3d 177, 181 (2d Cir. 1998); see also Williams v. Comm'r of Soc. Sec., 2007 U.S. App. LEXIS 9396, at *3 (2d Cir. 2007). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." See Metropolitan Stevedore Co. v. Rambo, 521 U.S. 121, 149 (1997) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The Court must "scrutinize the record in its entirety to determine the reasonableness of the decision reached." Lynn v. Schweiker, 565 F. Supp. 265, 267 (S.D. Tex. 1983) (citation omitted). Section 405(g) thus limits this Court's scope of review

to two inquiries: (I) whether the Commissioner's conclusions are supported by substantial evidence in the record as a whole, and (ii) whether the Commissioner's conclusions are based upon an erroneous legal standard. See Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003); see also Wagner v. Secretary of Health & Human Serv., 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

Both Plaintiff and Defendant move for judgment on the pleadings pursuant to 42 U.S.C. 405(g) and Rule 12(c) of the Federal Rules of Civil Procedure. Section 405(g) provides that the District Court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." 42 U.S.C.S. § 405(g) (2007). Under Rule 12(c), judgment on the pleadings may be granted where the material facts are undisputed and where judgment on the merits is possible merely by considering the contents of the pleadings. See Sellers v. M.C. Floor Crafters, Inc., 842 F.2d 639, 642 (2d Cir. 1988). A District Court should order payment of SSI benefits in cases where the record contains persuasive proof of disability and remand for further evidence would serve no purpose. See Carroll v. Secretary of Health and

Human Serv., 705 F.2d 638, 644 (2d Cir. 1981). The goal of this policy is "to shorten the often painfully slow process by which disability determinations are made." Id. Because this court finds that (1) the ALJ's decision was not supported by substantial evidence in the record as a whole, and (2) the record contains substantial evidence of disability, judgment on the pleadings is granted for the Plaintiff.

## II. __The ALJ's determination that the Plaintiff is not disabled is not supported by substantial evidence and contains errors of law__.

In finding that the Plaintiff was not disabled within the meaning of the Social Security Act, the ALJ adhered to the Social Security Administration's five-step sequential analysis for evaluating applications and determining whether an individual is disabled. See 20 C.F.R. § 404.1520 and 416.920(a)(4)(i)-(v)(2009).[2] Under step one of that process, the ALJ found that the Plaintiff had not been engaged in substantial gainful activity since June 1, 2001, the alleged onset date. (T. 23). At step two, the ALJ found that the Plaintiff's impairment, major depressive disorder, was severe within the meaning of the Regulations. (T. 23) The ALJ also considered the Plaintiff's back injury, tendonitis of the left

---

[2] Pursuant to the five-step analysis set forth in the regulations, the ALJ, when necessary, will: (1) consider whether the claimant is currently engaged in substantial gainful activity; (2) consider whether the claimant has any severe impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities; (3) determine, based solely on medical evidence, whether the claimant has any impairment or impairments listed in Appendix 1 of the Social Security Regulations; (4) determine whether or not the claimant maintains the residual functional capacity to perform his past work; and (5) determine whether the claimant can perform other work. See id.

elbow, and history of alcohol and marijuana abuse but determined them "non-severe."[3] (T. 23-24). At step three, the ALJ found that the Plaintiff does not have an impairment or combination of impairments that meets or medically equals, either singly or in combination, any of the impairments listed in Appendix 1, Subpart P of Regulations No. 4. (T. 16-18). At step four, the ALJ determined that the Plaintiff was unable to perform any past relevant work, yet he had "the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> the claimant should not be exposed to work-place hazards such
> as unprotected heights or dangerous machinery; the claimant
> c[ould] perform simple, routine, repetitive tasks involving
> independent judgment or discretion and changes in work process
> on an incidental basis (one-sixth of a routine eight-hour
> workshift). He [wa]s limited to no contact with the general

---

[3] This Court agrees that these findings are supported by substantial evidence in the record. Moreover, when asked specifically about his drug and alcohol abuse, Dr. Satti opined that it was "indeterminable" whether the Plaintiff's limitations and impairments would continue unabated if he were to sustain from the use of alcohol and drugs, but that it was "likely" that they would continue and his "prognosis [was] poor." (T. 322). On the Employment Assessment forms of 8/15/07 and 3/11/08, Dr. Satti checked that the Plaintiff's severe impairments had lasted or were expected to last 12 months and would continue if use of drugs and alcohol were to cease." (T. 252, 315). See Frankhauser v. Barnhart, 403 F.Supp.2d 261, 274 (W.D.N.Y. 2005)(citing SSA Emergency Teletype, "Questions and Answers Concerning DAA from July 2, 996 Teleconference - Medical Adjudicators - ACTIONS," August 30, 1996, Answer 29) (when a Plaintiff's treating psychiatrist is "unable 'to disentangle the restrictions and limitations imposed by [Plaintiff's] history of alcohol/substance abuse from those resulting from his other impairments'... a finding of not material would be appropriate.") Id.

public and c[ould] perform piece work at production rate
paces." (T. 25-28).

For step five of the analysis, the ALJ "asked a vocational expert
whether jobs exist in the national economy for an individual with
the claimant's age, education, work experience and residual
functional capacity." (T. 28-29). The ALJ determined based on VE
Andrew's testimony that jobs exist[ed] in the national economy that
the claimant c[ould] perform," and therefore he was not disabled.
Id.

The Commissioner argues that the ALJ's determination, that the
Plaintiff is not disabled, is supported by substantial evidence in
the record. The Plaintiff, however, has three contentions. (Pl.
Memorandum of Law ("Pl. Mem."), 1, 15-24). First, he argues that
the ALJ "erred by failing to properly identify all [his] severe
impairments." (Pl. Mem., 1, 15-19). Second, the Plaintiff contends
that the ALJ failed "to properly weigh the opinions of the treating
sources and treating non-medical sources:" namely Dr. Venkata Satti
and Social Worker ("SW") David Drumheller. (Pl. Mem., 1, 19-23).
These errors together, the Plaintiff contends, resulted in an
"improper residual functional capacity," and in the ALJ "failing to
give a proper hypothetical to the vocational expert." (Pl. Mem., 1,
23-24).

**A. The ALJ failed to consider all the Plaintiff's aliments in making his step two determination.**

The ALJ should have considered the Plaintiff's diagnosed personality disorder in his step two determination concerning the severity of Plaintiff's impairments and their impact on his physical and mental ability to perform basic work activities. The Regulations assure a claimant that the Social Security Administration will consider all of the evidence presented concerning a claimant's limitations when making a disability determination. See 20 C.F.R. § 404.1520(a)(3), 404.1527(b), 404.1545(a)(2). The ALJ discussed the Plaintiff's depression, back injury, tendonitis, and drug and alcohol addiction in making his step two determination. (T. 23-24). Yet, he did not mention the Plaintiff's diagnosed personality disorder let alone state a conclusion regarding its severity. Id. This failure to consider evidence of a documented ailment presented by a treating physician was legal error. See Paduani v. Comm'r of Soc. Sec., 2010 U.S. Dist. LEXIS 43846 (E.D.N.Y. May 5, 2010) (ALJ's failure to consider a personality disorder at step two or three of his determination warranted remand).

**B. The ALJ erred in applying the treating physician rule.**

The ALJ did not adequately explain what weight he gave the opinions of Plaintiff's current treating psychiatrist or even

mention the essence of those opinions.[4] The regulations specify that "a treating source's opinion on the issue(s) of the nature and severity of [a claimant's] impairment(s) will be given 'controlling weight' if the opinion is 'well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record.'" Green-Younger v. Barnhart, 335 F.3d 99, 106 (2d Cir. 2003)(citing 20 C.F.R. 404.1527(d)(2); Shaw v. Chater, 221 F.3d 126, 134 (2d Cir. 2000); Rosa v. Callahan, 168 F.3d 72, 78-79 (2d Cir. 1999)). Where a treating source's opinion is not given controlling weight, the Commissioner must apply the factors listed in 20 C.F.R. §404.1527(d)(2).[5] Then, "[a]fter considering the factors, the ALJ must comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." Burgess v. Astrue, 537 F.3d 117, 129 (2d Cir. 2008)(internal quotation marks ommited). Remand is appropriate where the ALJ fails to provide "'good reasons' for not crediting the opinion of a claimant's treating physician." Id. at 129-30 (citing Snell, 177 F.3d at 133(citing 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2)).

---

[4] The only specific references to Dr. Satti in the opinion are two references to the Plaintiff telling him something, and that "[i]n March 2007 the [Plaintiff] was described as 'psychiatrically stable' by Dr. Satti, his psychiatrist." (T. 26- 28).

[5] In deciding whether to give the treating physician's opinion controlling weight the ALJ must consider the following factors: "(i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the opinion; (iii) the opinion's consistency with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other relevant factors. Schaal v. Apfel, 134 F.3d 496, 503 (2d Cir. 1998) (citing 20 C.F.R. §§404.1527(d)(2), 416.927(d)(2)).

Between the date of the second denial on July 28, 2006 and the hearing in September 2008, Plaintiff's counsel submitted over a hundred pages of medical evidence to be added to the record. Among these additions were treating notes and progress reports from the Plaintiff's current treating psychiatrist Dr. Venkata Satti.[6] (T. 239-377). On March 27, 2007, Dr. Satti diagnosed the Plaintiff with major depressive disorder, recurrent and moderate, alcohol and drug dependancy and a personality disorder (T. 304-06). He prescribed Remeron, Lithium Carbonate, and, in April 2007, Naltrexone. (T. 306A). On August 15, 2007, Dr. Satti noted in an Employment Assessment that the Plaintiff would be limited in a work setting because of a severe depression that affects energy, motivation, concentration, and organization. (T. 314-15). He also opined that Plaintiff was moderately limited in all of the mental functioning categories: particularly, interacting with others and maintaining socially appropriate behavior. (T. 314). In the same report, he noted that Plaintiff had been psychiatrically unstable since June 2006, when he went off his medication following his move from California to New York. (T. 300, 315). On August 21, 2007, in a form for VESID, Dr. Satti opined that if Plaintiff could remain sober, he "may be able to do limited work via VESID to supplement

_____

[6] The record contains a New York State Disability Determination Form and a Drug/Alcohol Evaluation from Dr. Satti. (T. 322, 328-334). Dr. Satti also submitted three Medical Examinations for Employability Assessment, Disability Screening, and Alcoholism/Drug Addiction Determination ("Employability Assessment") dated 8/15/07, 3/11/08 and 7/29/2008 which had been provided to the New York State Office of Temporary and Disability Assistance which are included in the record. (T. 250-51, 252-53, 324-25).

SSD income," but noted and explained limitations in understanding and memory, sustained concentration and persistence, social interaction, adaption, and "other." (T. 328-334). Plaintiff's depression had "remitted somewhat" but he remained psychiatrically unstable due to "severe problems with concentration, focus, some dissociation, maybe some paranoia, exaggerated claims of abilities, and extreme dependance on others." (T. 333).

In an Employment Assessment dated March 11, 2008, Dr. Satti noted "no progress" on the personality disorder and that "[t]he more co-workers around [Plaintiff] and the more supervisors he might have, the worse he would do." (T. 252-53). Plaintiff remained moderately limited in understanding, remembering and carrying out instructions, making simple decisions, maintaining socially appropriate behavior without exhibiting behavior extremes, maintaining basic standards of personal hygiene and grooming and ability to function in a work setting at a consistent pace. (T. 253). He was very limited in interacting with others. Id. In July of 2008, Dr. Satti again completed an Employment Assessment. (T. 250-51). Plaintiff was then moderately limited in maintaining attention/concentration, and his difficulties in maintaining social appropriate behavior and functioning at a consistent pace were very limited rather than moderately limited. (T. 251). Otherwise, Dr. Satti's assessments remained substantially the same. (T. 250-51, 252-53).

The opinions of Plaintiff's social worker, David Drumheller, L.C.S.W., are consistent with those of Plaintiff's treating psychiatrist, with whom he worked closely. (T. 283-88, 288-97, 318-21, 354-58, 363). The ALJ's dismissal of SW Drumheller's opinions because he was "not a psychologist or psychiatrist," does not accurately reflect the law. SW Drumheller has regularly seen the Plaintiff in his professional capacity since March 1, 2007 and his opinions are based on a treating relationship.[7] (T. 294-97). The opinions of non-medical sources who nevertheless have a relationship with a claimant in their professional capacity are to be considered by an ALJ using "such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." SSR 06-03p, 2006 SSR LEXIS 5 at *14. Moreover, "[a]n opinion from a "non-medical sources" who has seen the individual in a professional capacity may, under certain circumstances, properly be determined to outweigh the opinion from a medical source, including a treating source." Id. Accordingly, "the case record should reflect the consideration of [such] opinions." Id.

---

[7]SW Drumheller, working closely with Dr. Satti, developed a treatment plan for the Plaintiff, which they later modified and expanded upon at three-month intervals. (T. 283-287, 288-92, 348-53). Dr. Satti and Mr. Drumheller provided the Plaintiff with referrals for housing, mental health and advocacy services, and an addiction clinic. (T. 354-58). The Plaintiff followed up on these referrals, though he later dropped out of the addiction clinic in the evaluation stage when he started drinking again, and then began the process again (T. 285, 290, 356).

On October 25, 2007, SW Drumheller completed a mental residual functional capacity evaluation at request of Plaintiff's counsel. (T. 318-21). In it he noted that Plaintiff's ability to function was seriously limited due to, among other things, poor concentration and memory, dependance on others, "no sustainability in employment," a history of not caring for himself, problems with abiding with society's rules, major depression, and a lack of self-confidence. (T. 318-321). Drumheller opined that the Plaintiff's condition would deteriorate under the stress of a job as "[Plaintiff] decompensates under any type of stress." (T. 320). These opinions are consistent with those given by Dr. Satti and should be considered on their merits alone as they were provided by a non-medical treating source who was saw the Plaintiff in his professional capacity. See White v. Comm'r of Soc. Sec., 302 F. Supp. 2d 170, 176 (W.D.N.Y. 2004)(reversing where the ALJ failed to give appropriate weight to the plaintiff's social worker, who had a regular treatment relationship with the plaintiff and whose diagnosis was consistent with the treating psychiatrist).

Dr. Satti's opinions are also largely consistent with the other treating psychiatrist in the record, Dr. Brian Thomas, who treated the Plaintiff in Ukiah, California from May 12, 2005 to February 23, 2006. (T. 401-05, 407-09, 416, 419-24, 425-28). Dr. Thomas diagnosed Plaintiff with major depressive disorder, and prescribed Remeron. (T. 428). Over a period of time from April 18, 2005 to March 21, 2006, Dr. Thomas and SW Sam Fernandez saw

Plaintiff at the Mendocino Clinic in California. (T. 399, 401-05, 407-09, 415-6, 419-24, 425-28, 486-87). On December 8, 2005, Dr. Thomas opined that the Plaintiff remained unable to work due to his depressive symptoms, including "difficulty with motivation." (T. 422). Though he hoped Plaintiff would "eventually be treated well enough" for him to be capable of returning to work, he concluded that this was "unlikely over the span of the next year." (T. 422). Between December 2005 and February 23, 2006, the Plaintiff's last appointment with Dr. Thomas, his diagnosis remained unchanged (T. 419-420).

In light of the substantial evidence in the record from treating sources it is disturbing that, the ALJ found that, "[a]s for the opinion evidence, [he] relied on the findings and opinions of the consultative psychiatric examiner." (T. 28). The only consultive mental exam in the record was performed on September 28, 2005 by Albert Kastl, Ph.D. (T. 457-460). Kastl stated that he "evaluated [the Plaintiff]...to assess his cognitive ability, memory skills, and visual functions." (T. 457). He reviewed a "report of Bruce Heller, M.D., dated July 19, 2005,[8] and the Clinic

---

[8] Dr. Heller diagnosed: "Depression, currently under medical and counseling treatment with suicidal ideation or plan; Low back pain, intermittent, with acute exacerbations with some signs of nerve root compression; Lateral epicondylitis of the dominant hand, resolving." (T. 466). He opined that the Plaintiff could stand/walk 6 hours in an eight hour day, sit unlimited hours, might require an elbow brace, lift 25 pounds on a frequent basis, and might have occasional postural and manipulative limitations. (T. 466).

Visit Note of April 18, 2005, prepared Sam Fernandez, L.C.S.W.,"[9] Plaintiff's former social worker. (T. 457); See (T. 463-472, 487). A WAIS-III test was performed during the visit but "only the verbal subtests could be administered" as the Plaintiff forgot his glasses. (T. 457). Plaintiff "ha[d] no difficulty understanding social conventions," had "mild difficulty with mental arithmetic," and completed memory tests with "effortful performance." (T. 458). Kastl noted that the Plaintiff "appear[ed] to have a long history of mild depressive disorder..." and that he was "mildly depressed" that day, noting that he had resumed taking anti-depressants. (T. 460).

Accordingly, Kastl concluded that Plaintiff: "[could] understand, carry out, and remember simple instructions...respond appropriately to co-workers, supervisors, and the public and...understand matters of attendance and safety." (T. 460). However, Plaintiff "would have difficulty dealing with change in routine work setting." (T. 460). This exam was performed more than three years prior to the ALJ's 2008 decision and was based on tests tailored to "assess cognitive ability, memory skills and visual function," not directed at making a psychiatric diagnosis. (T. 457). Moreover, the only outside information available to Dr. Kastl came from sources each of whom had only seen the

---

[9] The Clinic Note from Sam Fernandez provided a "provisional diagnosis of depression with generalized anxiety disorder." (T. 487). This was the first time the Plaintiff was seen in "primary care counseling" at this Center, and he was to be scheduled for an appointment with a psychiatrist "in a few weeks." (T. 487).

Plaintiff once. (T. 457, 466, 487). For these reasons, the ALJ's reliance on Dr. Kastl's assessment was particularly inconsistent with the other available evidence in the record. See Griffith v. Astrue, 2009 U.S. Dist. LEXIS 27533, fn. 9 (W.D.N.Y. Mar. 30, 2009)("State Agency Officials' reports, which are conclusory, stale, and based on an incomplete medical record, are not substantial evidence.")

The only other opinions in the record regarding Plaintiff's mental health came from non-examining psychiatrist Dr. Meenakshi and psychologist Dr. Kamin. These non-examining agency consultants reviewed the record, including Dr. Kastl's report, on October 21, 2005 and July 27, 2006, respectively, and found that the Plaintiff was capable of performing simple routine, repetitive tasks. (T. 434-46). Dr. Meenakshi completed a Mental Residual Functional Capacity Assessment and a Psychiatric Review Technique and Dr. Kamin stamped his name and signed off on it. Id. Dr. Meenakshi noted a diagnosis of "depressive dis[order], NOS" and found that the Plaintiff had mild difficulties in maintaining social functioning and moderate difficulties maintaining concentration, persistence or pace." (T. 437, 444). He found that there was "insufficient evidence" to opine as to episodes of decompensation, but that the "evidence does not establish the presence of the "C" criteria of the listings. (T. 444-45). The only other limitations mentioned were moderate limitations in the ability to understand, remember and carry out detailed instructions. (T. 430). These

opinions from non-examining sources cannot outweigh the opinions of Plaintiff's current and prior treating psychiatrists and social workers who saw the plaintiff over a period of time. See Vargas v. Sullivan, 898 F.2d 293, 295-296 (2d Cir. N.Y. 1990)(internal citations and marks removed) ("The general rule is that the written reports of medical advisors who have not personally examined the claimant deserve little weight in the overall evaluation of disability. The advisers assessment of what other doctors find is hardly a basis for competent evaluation without a personal examination of the claimant."); See also Westphal v. Eastman Kodak Co., 2006 U.S. Dist. LEXIS 41494 (W.D.N.Y. June 21, 2006)("[I]n the context of a psychiatric evaluation, an opinion based on personal examination is inherently more reliable than an opinion [of a consultant] based on [a review of] a cold record because observation of the patient is critical to understanding the subjective nature of the patient's disease and in making a reasoned diagnosis.").

The treating physician rule recognizes that a physician who has a long history with a patient is better positioned to "provide a detailed, longitudinal picture of [a claimant's] medical impairments." 20 C.F.R. § 404.1527(d)(2). This rule is even more relevant in the context of mental disabilities, which by their nature are best diagnosed over time. Santiago v. Barnhart, 441 F.Supp.2d 620, 629 (S.D.N.Y. 2006). Moreover, Dr. Satti's opinions are supported by a long treatment history, psychiatric evaluations

and the opinions of Dr. Thomas, SW Drumheller and SW Fernandez and neither the consultative medical exam performed by Dr. Kastl, nor the non-examining assessments by Meenakshi and Kamin constitute substantial evidence in contradiction of Dr. Satti's opinions. For these reasons, Dr. Satti's opinions should have been given controlling weight.

**C. The ALJ failed to consider the record as a whole.**

The ALJ determination that the Plaintiff was improving was erroneous and not substantiated by the record as a whole. The ALJ stated that Plaintiff's "treating mental health care providers noted his symptoms [as]...low energy, lack of motivation, depressed mood, difficulty dealing with stress, feelings of sadness and discouragement, hopelessness, pessimistic attitude, low self-esteem, irritability, social isolation, dependence on others, some paranoia, concentration problems, and difficulty making decisions." (T. 27). However, the ALJ did not identify the source of these determinations and subsequently concluded: "However, the evidence shows that the claimant's symptoms varied in intensity and...overall, the claimant is not more than moderately limited with regard to performing mental work-related activities. [As t]he claimant's treating physicians have characterized his depression as recurrent but moderate and without psychotic features." (T. 27). The ALJ then cited a series of treatment notes attempting to establish a pattern of improvement in the Plaintiff's symptoms from October 2005 to March 2007. (T. 27-28).

The ALJ's assessment that the Plaintiff's symptoms were improving is not supported by the record as a whole and also fails to recognize that many mental conditions are typified by waxing and waning of symptoms. The Regulations clearly recognize that the functioning of an individual with a mental impairment may "vary considerably over time." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §12.00(D)(2). The ALJ does not take into account that the treating psychiatrists were certainly aware of the changes in Plaintiff's symptoms, yet still gave consistent opinions supporting a finding of disability. For example, in December 2007, Dr. Satti noted that Plaintiff was sad because he had not gone anywhere for Thanksgiving. (T. 255). Dr. Satti recommended making social connections in the community and at that time described the Plaintiff as "psychiatrically stable." Id. Nevertheless, on April 14, 2008, Dr. Satti and Mr. Drumheller noted that over the previous three months, Plaintiff's "depression ha[d] somewhat worsened as he [was] more socially isolated and still drinking." (T. 285). Later, Dr. Satti would again describe Plaintiff as "psychiatrically unstable." (T. 205, 252). Similarly, in 2005, Dr. Thomas noted that Plaintiff showed some improvement in mood and seemed to be benefitting from therapy, yet had "low motivation overall," and remained on Remeron, with increased dosage prescribed on 8/23/05. (T.401-428). However, Dr. Thomas still opined that the Plaintiff remained unable to work due to his depressive symptoms, including "difficulty with motivation." (T. 422).

The ALJ inappropriately gave his interpretation of the treating physician's notes. "In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'" <u>Rosa v. Callahan</u>, 168 F.3d 72, 79 (2d Cir. N.Y. 1999) (internal citations removed). Furthermore, the record must be considered as a whole. "[The ALJ] may not select and discuss only that evidence that favors [his] ultimate conclusion...where items of pertinent weight have been missed, [the ALJ's] decision should not be upheld". <u>New York ex. Rel. Bodnar v. Secretary of Health and Human Services</u>, 903 F.2d 122, 126-127 (2d Cir. 1990).

## CONCLUSION

For the reasons set forth above, this Court finds that the Commissioner's decision denying the Plaintiff disability benefits under SSI, was not supported by substantial evidence in the record and was based on legal error. After reviewing the complete record, I find that the ALJ erred in failing to consider Plaintiff's personality disorder in his analysis and in not giving appropriate weight to the opinions of the treating physicians. I further conclude that the record contains substantial evidence of disability such that further evidentiary proceedings would serve no purpose. Accordingly, the defendant's motion for judgment on the pleadings is denied and the plaintiff's motion for judgment on the pleadings is granted. The Commissioner's determination denying

benefits is Vacated, and this matter is Remanded to the Commissioner for calculation benefits.

**ALL OF THE ABOVE IS SO ORDERED.**

S/Michael A. Telesca

_____
Michael A. Telesca
United States District

DATED: July 27, 2010
       Rochester, New York